**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No.  06-10237-MLB |
| ) | |
| JONEARL B. SMITH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant's motion to disclose a confidential informant and suppress evidence.  (Docs. 21 and 22.)  The motions have been fully briefed (Docs. 21, 22, 25, 29) and the court conducted an evidentiary hearing on March 5, 2007. Defendant's motions are DENIED for the reasons stated herein.

**I.  FACTS**

On October 19, 2006, Detective Jason Miller was conducting surveillance in an undercover vehicle on East 23rd Street North in Wichita, Kansas.  Miller was approximately four to five houses away from the residence at 1815 E. 23rd Street, which was the focus of a narcotics investigation.  At approximately 2:00 p.m., Miller saw a 2001 maroon Expedition pull up into the driveway of the residence. The Expedition's driver and sole occupant, defendant, went in and out of the residence quickly.  Before entering the Expedition, defendant looked up and down the street and then stopped at the back of the Expedition.  Defendant then looked up and down the street again and then entered the Expedition and drove away.  Miller followed.  At the intersection of 21st and Minnesota, defendant failed to signal as he

turned onto 21st Street. Defendant again failed to signal when he entered the on-ramp to interstate 135.

Miller was concerned about the traffic violation and defendant's suspicious activities at the residence under surveillance. Miller called dispatch for a patrol officer to assist since Miller was in an undercover vehicle and did not have the capability to stop defendant. City of Wichita police officer Eric Landon responded to Miller's request for assistance. Landon stopped the Expedition on the interstate. Miller did not participate in the stop. Landon questioned defendant about his name and address and asked for defendant's identification, registration and insurance. Landon returned to his vehicle and called defendant's information into dispatch to check if there were any outstanding warrants for defendant. While waiting for this information, Landon returned to the Expedition and asked defendant to move off of the interstate. Defendant complied with this request.

After defendant moved the Expedition off the interstate, Officer Webber came on the scene to assist Landon. Landon had also requested the assistance of an officer with a drug dog, but the detective with the drug dog was unavailable. After approximately fifteen to twenty minutes, Landon was informed that defendant did not have any outstanding warrants. Both Landon and Webber approached defendant's Expedition. Landon asked defendant if he was on parole or probation. Defendant replied that he was on parole. Landon asked defendant if he had any drugs or guns in the Expedition that would violate his parole. Defendant denied having any drugs or guns. Landon asked defendant if they could search the Expedition. Defendant consented. When

defendant exited the Expedition, both officers patted him down to check for weapons.  Webber began searching the Expedition and Landon wrote out the ticket to defendant for failing to signal.  During the search, Webber found a substance in the gas tank lid.  Webber did not remove the substance.  Detective Miller then arrived on the scene with a drug dog.  The drug dog alerted at the area of the gas tank lid.  Defendant was then taken into custody.

**II.  ANALYSIS**

Defendant believes his Fourth Amendment rights have been violated.  Defendant asserts that the detention for the initial traffic stop was not reasonably related to the justification for the stop.  Defendant also argues that his consent to the search of the Expedition, given during this period of allegedly unlawful detention, was not valid because it was not given voluntarily, freely, intelligently, and without coercion. Defendant therefore asserts that the search of the Expedition was illegal and the evidence obtained as a result of that search (the crack cocaine) should be suppressed. Defendant did not testify.

A.  VALIDITY OF THE INITIAL STOP

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited and the resulting detention quite brief."  See Delaware v. Prouse, 440 U.S. 648, 653 (1979).  "Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the

-3-

stops are analyzed under the principles articulated in Terry v. Ohio. United States v. King, No. 05-6399, 2006 WL 3705188, ay *2 (10th Cir. Dec. 18, 2006). The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders a traffic stop reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.

An initial traffic stop is justified at its inception if it was "based on an observed traffic violation," or if "the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). Clearly, it is undisputed that a traffic violation occurred justifying Landon's stop of the Expedition. Even when the initial stop is valid, however, any investigative detention must not last "longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). An officer "conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). The uncontroverted testimony shows that the investigative detention for the traffic stop was valid. The stop lasted only long enough for Landon to approach the Expedition and speak with defendant about his information, explain the nature of the traffic violation to defendant, return to the patrol car and run checks on defendant's license and criminal history and run a check on the Expedition's registration, and then ask defendant to move off of the interstate. The traffic stop

lasted only fifteen to twenty minutes.  Therefore, the scope of the traffic stop was reasonably related in scope to the circumstances which initially justified the interference.  Terry, 392 U.S. at 20.

Landon's questioning of defendant about drugs and guns is also permissible as long as the questions did not extend the time that defendant was detained.  United States v. Stewart, 473 F.3d 1265, 1269 (10th Cir. 2007).  When Webber and Landon approached the Expedition and began asking questions, Landon had completed all background checks but had failed to fill out the failure to signal ticket and return defendant's documents.  Landon completed filling out the ticket and handed defendant all of his documents while Webber was searching the Expedition with defendant's consent.  Even though the questions may have extended the time that defendant was detained by a couple of minutes, the officers did not unreasonably extend the amount of time that defendant was detained.  United States v. Alcaraz-Arellano, 441 F.3d 1252, 1259 (10th Cir. 2006)(citing Illinois v. Caballes, 543 U.S. 405, 407, 125 S. Ct. 834, 837; United States v. Martin, 422 F.3d 597, 601-02 (7th Cir. 2005)("A traffic stop does not become unreasonable merely because the officer asks questions unrelated to the initial purpose for the stop, provided that those questions do not unreasonably extend the amount of time that the subject is delayed."); United States v. Childs, 277 F.3d 947, 949 (7th Cir. 2002) (en banc) ("questions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable").  Therefore, the questioning was lawful.

B. VALIDITY OF THE SEARCH

Because the search that occurred was a warrantless search, the

government bears the burden of proving by a preponderance of the evidence that the search was justified. United States v. Zubia-Melendez, 263 F.3d 1155, 1160 (10th Cir. 2001). The government must prove that consent to search was given voluntarily and that there was "no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." United States v. Sanchez-Valderuten, 11 F.3d 985, 990 (10th Cir. 1993). Whether a party has voluntarily consented is evaluated based on the totality of the circumstances. United States v. West, 219 F.3d 1171, 1177 (10th Cir. 2000).

According to the uncontroverted evidence, Landon and Webber approached defendant to ask him if they could search the Expedition. The officers did not raise their voices or display their weapons. The court finds that defendant voluntarily consented to the search. Specifically, the court finds that defendant gave his consent to search when he answered "yes" to Landon asking if the officers could search the Expedition. As discussed above, a reasonable person would not believe Landon was exerting a coercive show of authority when he asked defendant this question. Landon was not using a commanding tone of voice, did not threaten defendant, and did not intimidate defendant.

Defendant's motion to suppress the evidence is denied. (Doc. 21).

C.   CONFIDENTIAL INFORMANT

In counts 2 and 3 of the superseding indictment, defendant is charged with distributing crack cocaine on June 14 and 16, 2006. (Doc. 18). Defendant moves for the government to disclose the

identity of the confidential informant who was involved in those alleged transactions.

> Due to the strong public interest in furthering effective law enforcement, the government enjoys a privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with information on criminal acts. Roviaro v. United States, 353 U.S. 53, 59, 77 S. Ct. 623, 627, 1 L. Ed.2d 639 (1957). While anonymity encourages citizens to communicate their knowledge of unlawful activity, the privilege must give way to fairness when disclosure of the informer's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61, 77 S. Ct. at 628. The need for disclosure depends on the "particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62, 77 S. Ct. at 629. In short, the problem "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id.
> We have applied the legal standard established in Roviaro on numerous occasions. While we agree the district court must disclose the informer's identity if the individual's testimony "might be relevant to the defendant's case and justice would best be served by disclosure," United States v. Reardon, 787 F.2d 512, 517 (10th Cir. 1986), we have consistently ruled that where the information sought "would be merely cumulative," or where the informer did not participate in the illegal transaction, disclosure is not required, United States v. Scafe, 822 F.2d 928, 933 (10th Cir. 1987). See United States v. Freeman, 816 F.2d 558, 562 (10th Cir. 1987); Reardon, 787 F.2d at 517. "[M]ere speculation about the usefulness of an informant's testimony" is not sufficient to warrant disclosure. Scafe, 822 F.2d at 933. Nor must the government supply the defendant with information about an informer when the individual introduces suspected traffickers to narcotics agents. United States v. Ortiz, 804 F.2d 1161, 1166 (10th Cir. 1986).

United States v. Mendoza-Salgado, 964 F.2d 993, 1000-01 (10th Cir. 1992).

Defendant asserts that the confidential informant is a crucial witness to the drug transactions that allegedly occurred. These alleged transactions occurred in a vehicle between an undercover agent

-7-

and defendant with a confidential informant also present. Defendant has not put forth any evidence or even argument that the confidential informant's testimony would be relevant and not cumulative. The undercover agent will presumably be testifying about the events that occurred. Absent a showing that the confidential informant's testimony will be relevant, public interest dictates that the government must not be required to disclose its confidential sources.

Defendant's motion to disclose the confidential informant is denied. (Doc. 22).

### III.  CONCLUSION

Defendant's motion to suppress is DENIED. (Doc. 21). Defendant's motion to disclose the confidential informant is DENIED. (Doc. 22). The clerk is directed to set this case for trial.

IT IS SO ORDERED.

Dated this <u>29th    </u> day of March 2007, at Wichita, Kansas.

<u>   S/Monti Belot        </u>
Monti L. Belot
UNITED STATES DISTRICT JUDGE